No. 24-3397

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CENTER FOR BIOLOGICAL DIVERSITY, et al.,
*Petitioners*,

v.

DEBRA HAALAND, Secretary of the
U.S. Department of the Interior, et al.,
*Respondents*.

On Petition for Review of Actions of the
U.S. Fish and Wildlife Service and National Marine Fisheries Service

**FEDERAL RESPONDENTS' MOTION FOR ABEYANCE**

Of Counsel:                                TODD KIM
                                           *Assistant Attorney General*
MICHAEL P. ROUTHIER                        KEVIN W. McARDLE
*Attorney*                                 JUSTIN D. HEMINGER
Office of the Solicitor                    *Attorneys*
U.S. Department of the Interior            Environment and Natural Resources
                                           Division
JOSHUA B. FORTENBERY                       U.S. Department of Justice
ALEXANDER J. HILDEBRAND                    Post Office Box 7415
*Attorneys*                                Washington, D.C. 20044
Office of the General Counsel              (202) 514-5442
National Oceanic and Atmospheric           justin.heminger@usdoj.gov
Administration

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.......................................................................ii

INTRODUCTION.................................................................................... 1

BACKGROUND ..................................................................................... 3

     A.    The Endangered Species Act ..................................... 3

     B.    The Alaska LNG Project ........................................... 5

     C.    Recent developments............................................... 6

LEGAL STANDARD ............................................................................. 7

ARGUMENT ......................................................................................... 8

I.    An abeyance will not harm the other parties. ................................ 8

II.    The Services will suffer inequitable hardship without
an abeyance. ................................................................................... 11

III.    An abeyance will promote judicial efficiency................................. 13

CONCLUSION ..................................................................................... 17

CERTIFICATE OF COMPLIANCE...................................................... 18

## EXHIBITS

Exhibit 1: Declaration of Neesha Stellrecht, U.S. Fish and
           Wildlife Service

Exhibit 2: Declaration of Anne Marie Eich, National Marine
           Fisheries Service

# TABLE OF AUTHORITIES

## Cases

*Acura of Bellevue v. Reich*,
    90 F.3d 1403 (9th Cir. 1996) ...................................................... 16

*American Petroleum Institute v. EPA*,
    683 F.3d 382 (D.C. Cir. 2012) .................................................... 14

*Anchor Line Ltd. v. Federal Maritime Commission*,
    299 F.2d 124 (D.C. Cir. 1962) .................................................... 12

*Assiniboine & Sioux Tribes of Fort Peck Indian Rsrv. v.
    Bd. of Oil & Gas Conservation of State of Montana*,
    792 F.2d 782 (9th Cir. 1986) ................................................ 15, 16

*Clinton v. Jones*,
    520 U.S. 681  (1997) .................................................................... 7

*CMAX v. Hall*,
    300 F.2d 265 (9th Cir. 1962) ...................................... 7, 8, 11, 13

*Devia v. U.S. Nuclear Regulatory Commission*,
    492 F.3d 421 (D.C. Cir. 2007) .................................................... 14

*In re PG&E Corp. Secs. Litig.*,
    100 F.4th 1076 (9th Cir. 2024) .................................................... 8

*Grand Canyon Trust v. U.S. Bureau of Reclamation*,
    691 F.3d 1008 (9th Cir. 2012) .................................................... 13

*Landis v. North American Co.*,
    299 U.S. 248 (1936) .................................................................... 7

*Louisiana Power & Light Co. v. Federal Power Commission*,
    526 F.2d 898 (5th Cir. 1976) ...................................................... 15

*National Park Hospitality Ass'n v. Department of Interior,*
  538 U.S. 803 (2003) ........................................................ 15

*Southwestern Electric Power Co. v. EPA,*
  920 F.3d 999 (5th Cir. 2019) ....................................... 12

## Statutes

Natural Gas Act
  15 U.S.C. § 717r(d)(5) .................................................. 14

Endangered Species Act
  16 U.S.C. § 1532(19) ...................................................... 4

  16 U.S.C. § 1533 .............................................................. 3

  16 U.S.C. § 1536(a)(2) ..................................................... 3

  16 U.S.C. § 1536(b)(4) ..................................................... 5

  16 U.S.C. § 1536(o)(2) ..................................................... 5

  16 U.S.C. § 1538(a)(1)(B) ................................................ 4

## Regulations

50 C.F.R. § 17.11 ............................................................... 3

50 C.F.R. § 222.101(a) ...................................................... 3

50 C.F.R. § 402.01(b) ........................................................ 3

50 C.F.R. § 402.02 ............................................................. 4

50 C.F.R. § 402.13(a) ........................................................ 4

50 C.F.R. § 402.14(a) ........................................................ 3

50 C.F.R. § 402.14(b)(1) ................................................... 4

50 C.F.R. § 402.14(g)(2) ................................................................ 4

50 C.F.R. § 402.14(g)(3) ................................................................ 4

50 C.F.R. § 402.14(g)(4) ................................................................ 4

50 C.F.R. § 402.14(g)(7) ................................................................ 5

50 C.F.R. § 402.14(i)(1) ................................................................. 5

50 C.F.R. § 402.14(i)(6) ................................................................. 5

50 C.F.R. § 402.14(h)(1)(iv)(A) .................................................... 4

## INTRODUCTION

Under the Endangered Species Act, the U.S. Fish and Wildlife Service and the National Marine Fisheries Services (together, the Services) each issued a biological opinion for the Alaska LNG Project. In this case, several environmental groups (Environmental Petitioners) have petitioned for review of those biological opinions. But as the Services' attached declarations explain (Exhibits 1 and 2), the Services now expect that formal consultation will be reinitiated and that they will issue new biological opinions that will replace the challenged biological opinions. The Services expect to complete the consultations and issue the new biological opinions by the end of 2025.

Given the Services' plans, this Court should hold the petition in abeyance through 2025. The abeyance will give the Services a reasonable period to complete the consultations and prepare the new biological opinions.

Environmental Petitioners consent to this abeyance. Intervenor Alaska Gasline Development Corporation opposes an abeyance, but a proper balancing of the interests at stake confirms that the abeyance is warranted.

1

*First*, Alaska Gasline will not be harmed by the stay. The company does not plan to begin construction on the first phase of the Project until 2026. Meanwhile, the biological opinions will remain in place during the reinitiated consultations. And if Alaska Gasline wants to move forward with the Project, it will need the Services to complete the reinitiated consultations.

*Second*, an abeyance will allow the Services to devote their limited resources to consulting and developing new biological opinions, rather than wasting time on premature litigation over agency actions they are reconsidering.

*Third*, an abeyance will promote judicial economy by potentially narrowing and eliminating the issues that the Court must resolve. An abeyance also accords with prudential ripeness principles by allowing the Services a reasonable time to complete their administrative processes before proceeding to judicial review.

In sum, the Court should grant an abeyance through 2025.

2

# BACKGROUND

## A.    The Endangered Species Act

The Endangered Species Act provides for the listing of species as "threatened" or "endangered" and for designating critical habitat for listed species. *See generally* 16 U.S.C. § 1533. The Secretary of the Interior is generally responsible for listing terrestrial and freshwater species and for designating their critical habitat, responsibilities that are discharged by the Fish and Wildlife Service. 50 C.F.R. §§ 17.11, 402.01(b). The Secretary of Commerce is responsible for certain marine species, responsibilities that are discharged by the National Marine Fisheries Service. 50 C.F.R. §§ 222.101(a), 402.01(b).

The Act protects listed species in several ways. Each federal agency, in consultation with the relevant Service, must "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of" a listed species or "result in the destruction or adverse modification" of designated critical habitat. 16 U.S.C. § 1536(a)(2). The agency proposing to act (the action agency) must first determine whether its action "may affect" a listed species or critical habitat. 50 C.F.R. § 402.14(a). Formal consultation is thereafter

required when either the action agency or the Service concludes that the proposed action is "likely to adversely affect any listed species or critical habitat." *Id*. §§ 402.14(b)(1), 402.13(a).

After formal consultation, the Service issues a biological opinion addressing whether the action is "likely to jeopardize the continued existence of a listed species or result in the destruction or adverse modification of critical habitat." 50 C.F.R. §§ 402.14(g)(4), (h)(1)(iv)(A). The opinion evaluates the status of the species and the effects of the action that will be added to the environmental baseline. *Id*. §§ 402.14(g)(2)-(3), 402.02.

The Act prohibits the unauthorized "take" of members of an endangered species. 16 U.S.C. § 1538(a)(1)(B). The Act's take prohibition also extends, under the Services' implementing regulations, to various threatened species. "The term 'take' means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." *Id*. § 1532(19).

If, after formal consultation, the Service concludes that the proposed action is not likely to cause jeopardy but that incidental take of members of a listed species is reasonably certain to occur, the Service

4

provides an "incidental take statement" with its biological opinion. 16

U.S.C. § 1536(b)(4); 50 C.F.R. § 402.14(g)(7). The incidental take

statement must specify the impact (amount or extent) of anticipated

take, reasonable and prudent measures to minimize such impact, and

terms and conditions to implement those measures. 16 U.S.C.

§ 1536(b)(4); 50 C.F.R. § 402.14(i)(1). Any take in compliance with the

terms and conditions is exempt from the Act's take prohibition. 16

U.S.C. § 1536(o)(2); 50 C.F.R. § 402.14(i)(6).

### B.    The Alaska LNG Project

The Alaska LNG Project is a proposed energy project in Alaska.

The Project includes a gas treatment plant in Alaska's North Slope; two

natural gas pipelines connecting production units to the plant; an 806-

mile-long pipeline from the plant to an export facility; and liquefaction

facilities on the Kenai Peninsula to export liquified natural gas (LNG).

In May 2020, the Federal Energy Regulatory Commission

authorized the project (Authorization Order). *See Alaska Gasline Dev.

Corp.*, 171 FERC ¶ 61,134, 61,834 (May 21, 2020). Shortly thereafter, in

June 2020, the Services issued biological opinions for the Project, which

address many species listed under the Endangered Species Act,

5

including polar bears, bowhead whales, sperm whales, and Arctic ringed seals, to name just a few.

## C.    Recent developments

In May 2024, Environmental Petitioners petitioned for review challenging the biological opinions. Since then, the Services have concluded that consultation should be reinitiated for the biological opinion. As the attached declarations explain, the Services expect the consultations will be reinitiated in the coming weeks. Ex. 1, ¶ 4; Ex. 2, ¶ 4. The Services expect to finish the consultations by the end of 2025. Ex. 1, ¶ 5; Ex. 2, ¶ 5. And the Services expect to issue new biological opinions that will replace the existing ones. Ex. 1, ¶ 5; Ex. 2, ¶ 7.

Finally, Intervenor Alaska Gasline's consultant recently released a draft economic analysis for phase one of the Alaska LNG Project—constructing the 806-mile gas pipeline across Alaska.[1] That analysis is predicated on phase one requiring one year of construction preparation and four years of construction, "starting in 2026."[2]

---

[1] Wood Mackenzie, *Economic Viability Assessment and Economic Value of Alaska LNG Project—Phase 1*, Interim Draft at 12 (Sept. 12, 2024), https://perma.cc/C4RN-GPAE.

[2] *Id.*

## LEGAL STANDARD

Courts have "broad discretion to stay proceedings." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). This authority is "incidental to the power inherent in every court to control" its docket. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). The Court may grant a stay or an abeyance when it would serve "economy of time and effort for itself, for counsel, and for litigants." *Id*. The party seeking an abeyance bears the burden of establishing its need. *Clinton*, 520 U.S. at 708.

This Court balances three non-exclusive factors in deciding whether to stay a case: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law. *See CMAX v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (articulating the three factors); *In re PG&E Corp. Secs. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024) (applying the *CMAX* factors).

7

## ARGUMENT

The proper balancing of the applicable factors confirms that the Court should place the petition for review in abeyance. The abeyance should run through 2025 to give the Services a reasonable period to complete the reinitiated consultations under the Endangered Species Act and to issue new biological opinions.

## I. An abeyance will not harm the other parties.

Under the first factor, the parties to this case will not be materially harmed by an abeyance. *See CMAX*, 300 F.2d at 268.

The abeyance does not prejudice Environmental Petitioners. Alaska Gasline does not plan to begin construction on the first phase of the Project until 2026 at the earliest. Confirming the lack of imminent harm to their interests, Environmental Petitioners have consented to an abeyance that runs through 2025.

Nor will the abeyance harm Alaska Gasline. Alaska Gasline has no immediate need to rely on the biological opinions for Project-related activities because it does not plan to begin construction until 2026. The Services expect to complete the reinitiated consultations and issue new biological opinions by the end of 2025, before Alaska Gasline's projected

8

construction date. And the current biological opinions remain in place while the Services conduct the reinitiated consultations, undercutting any harm to Alaska Gasline.

In a recent filing, Alaska Gasline claimed without factual support that it was prejudiced by delay resolving this case and by "[r]egulatory and litigation risk." Alaska Gasline Partial Opposition to Motion for Extension 4, Dkt. No. 28. Yet regulatory and litigation risk is an ordinary feature of any project as large as the Alaska LNG Project, which is estimated to cost more than $40 billion and includes three large pieces of infrastructure—a natural gas processing plant, an 806-mile pipeline across Alaska, and an LNG export facility.

Besides, contrary to Alaska Gasline's vague and unsupported assertions, the company *needs* the new biological opinions if it wants to build the Project. The Services have determined that the reinitiated consultations are warranted for the Project to comply with federal law protecting listed species in Alaska. Ex. 1, ¶ 3; Ex. 2, ¶ 4. And when the Commission authorized the Project, it imposed environmental conditions on Alaska Gasline, one of which requires the company to show, before beginning construction on any Project facilities, that it has

9

received "all applicable authorizations required under federal law (or evidence of waiver thereof)." Authorization Order, 171 FERC ¶ 61,876. Even if Alaska Gasline disagrees with the Services' expert judgment, the company will only inflict self-harm by fighting the Services' process.

On that score, it is Alaska Gasline's own regulatory needs that are driving the Fisheries Service to reinitiate consultation. As explained in the Fisheries Services' declaration, Alaska Gasline's Prudhoe Bay authorization under the Marine Mammal Protection Act has expired, and its Cook Inlet authorization will expire in 2025. Ex. 2, ¶ 4. Alaska Gasline has applied for a new Prudhoe Bay authorization, and shortly should apply to renew its Cook Inlet authorization. Ex. 2, ¶ 4. Thus, the Fisheries Services plans to reinitiate consultation to support the new authorizations that Alaska Gasline *will need* if it wants to build the Project.

Likewise, the Wildlife Service has concluded that reinitiating consultation on its biological opinion is warranted to account for developments in this Court's decisions. Ex. 1, ¶ 3. Thus, the Wildlife Service has concluded that to comply with the Endangered Species Act,

10

the Commission should reinitiate consultation on the Project, and the Wildlife Service must issue a new biological opinion. Ex. 1, ¶¶ 3-5.

Alaska Gasline may recycle arguments from its motion to dismiss, but that effort is misguided. For one thing, most of Alaska Gasline's threshold arguments are meritless for reasons the Services have already explained. *See* Federal Respondents' Response to Motion to Dismiss 11, Dkt. No. 21. For another, Alaska Gasline's threshold arguments are beside the point. Even if Alaska Gasline were correct that Environmental Petitioners should have challenged the current biological opinions sooner, once the Services replace those biological opinions with new ones, Environmental Petitioners can timely challenge those new final agency actions. There is no point in litigating challenges to the current biological opinions because the Services expect to replace them in 2025. Ex. 1, ¶ 5; Ex. 2, ¶ 7.

In short, Alaska Gasline faces no material harm from this case being placed in abeyance through 2025.

## II.    The Services will suffer inequitable hardship without an abeyance.

On the other side of the ledger, the Services will be prejudiced in two ways if this case proceeds. *See CMAX*, 300 F.2d at 268.

11

First, the Services will be harmed by expending their limited resources on needless litigation. As explained in their declarations, the Services' regional offices in Alaska have limited resources to devote to their critical work protecting numerous listed species in Alaska. Ex. 1, ¶ 6; Ex. 2, ¶ 6. Those limited resources will be stretched even further if they are forced to litigate over the current biological opinions while consulting on those same biological opinions. Ex. 1, ¶ 6; Ex. 2, ¶ 6.

Besides taxing the Services' limited resources, allowing the current litigation to proceed will interfere with the Services' administrative process. When "an agency seeks to reconsider its action, it should move the court to remand or to hold the case in abeyance pending reconsideration by the agency." *Anchor Line Ltd. v. Federal Maritime Commission*, 299 F.2d 124, 125 (D.C. Cir. 1962); *see also Southwestern Electric Power Co. v. EPA*, 920 F.3d 999, 1013 (5th Cir. 2019) (observing that the court "granted EPA's motion to sever and hold in abeyance" petitions for review and that EPA had "announced that it would reconsider" its regulations). An abeyance or remand allows the agency to apply its expertise and follow its ordinary administrative process without premature judicial review. Absent the abeyance, this

12

Court's review of the current biological opinions risks intruding on the Services' expert judgment.

## III.  An abeyance will promote judicial efficiency.

Finally, an abeyance will promote the "orderly course of justice." *CMAX*, 300 F.2d at 268. Placing the petition in an abeyance through 2025 may simplify or reduce the issues that the Court ultimately needs to address or eliminate the need for litigation altogether. And for similar reasons, an abeyance is consistent with principles of prudential ripeness and administrative exhaustion.

An abeyance will further judicial efficiency. When the reinitiated consultations are completed, the Services expect to issue new biological opinions. Because those biological opinions will replace the biological opinions challenged in the current petition for review, the current petition will be rendered moot. *See Grand Canyon Trust v. U.S. Bureau of Reclamation*, 691 F.3d 1008, 1017 (9th Cir. 2012) (collecting cases and observing that "[w]e have held that the issuance of a superseding BiOp moots issues on appeal relating to the preceding BiOp."). The new biological opinions also may resolve or narrow the issues that Environmental Petitioners would raise in this case, reducing the

13

Court's burden by streamlining any future litigation. Because the Services will be consulting and issuing new biological opinions, it is "too speculative whether the validity of the" current biological opinions "is a problem that will ever need solving." *Devia v. U.S. Nuclear Regulatory Commission*, 492 F.3d 421, 426 (D.C. Cir. 2007) (cleaned up).

To be sure, the applicable judicial review provision in the Natural Gas Act directs the Court to set any action for "expedited consideration." 15 U.S.C. § 717r(d)(5). But it makes little sense for the parties and the Court to proceed now—in an expedited fashion or otherwise—with a challenge to biological opinions that may be materially modified at the conclusion of the Services' consultations. Nothing in the Natural Gas Act precludes the Court from exercising its inherent authority to manage its proceedings in an efficient and logical manner. And it would "hardly be sound stewardship of judicial resources to decide this case now on the basis" of the current biological opinions when the Services' new biological opinions may "dispense with the need for such an opinion." *American Petroleum Institute v. EPA*, 683 F.3d 382, 388 (D.C. Cir. 2012).

14

An abeyance also accords with principles of prudential ripeness. The ripeness doctrine is "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 807-08 (2003) (cleaned up).

Because ripeness is "peculiarly a question of timing," the Court must "look at the facts as they exist today in evaluating whether the controversy before us is sufficiently concrete to warrant our intervention." *Assiniboine & Sioux Tribes of Fort Peck Indian Rsrv. v. Bd. of Oil & Gas Conservation of State of Montana*, 792 F.2d 782, 788 (9th Cir. 1986). Because the Services will be engaging in reinitiated consultations, it is premature for the Court to review biological opinions that the Services will be reevaluating and that may change. *See, e.g.*, *Louisiana Power & Light Co. v. Federal Power Commission*, 526 F.2d 898, 910 (5th Cir. 1976) (holding that matters "still pending before" the agency are "not yet ripe for judicial review"). And as discussed in

15

Argument Point I above, neither Environmental Petitioners nor Alaska Gasline faces hardship that necessitates judicial review at this time. *See also Acura of Bellevue v. Reich*, 90 F.3d 1403, 1408 (9th Cir. 1996) ("A showing of financial hardship, however, is insufficient to justify a finding of ripeness.").

Likewise, an abeyance is consistent with the policies underlying the administrative exhaustion requirement. *See Assiniboine & Sioux Tribes*, 792 F.2d at 791. Those policies are: (1) courts "should not prematurely interfere with agency processes"; (2) agencies "should have an opportunity to correct their mistakes"; and (3) the reviewing court "benefits from an agency's application of its expertise to the problem at hand, as well as from the development of an adequate factual record." *Id*. These policies are implicated here because the Services should be allowed to (1) follow their consultation processes without judicial interference, (2) correct any mistakes and align their actions with this Court's more recent decisions, and (3) apply their expertise to the issues and develop the proper factual record.

In short, an abeyance will further the orderly course of justice.

16

## CONCLUSION

For all these reasons, the Court should hold this petition for

review in abeyance through 2025.

Respectfully submitted,

Of Counsel:

/s/ *Justin D. Heminger*

TODD KIM

MICHAEL P. ROUTHIER
*Attorney*
Office of the Solicitor
U.S. Department of the Interior

*Assistant Attorney General*
KEVIN W. McARDLE
JUSTIN D. HEMINGER
*Attorneys*
Environment and Natural Resources
Division

JOSHUA B. FORTENBERY
ALEXANDER J. HILDEBRAND
*Attorneys*
Office of the General Counsel
National Oceanic and Atmospheric
Administration

U.S. Department of Justice

October 3, 2024
DJ 90-13-9-17642

17

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font.

I further certify that this filing complies with the length limitation in Circuit Rule 27-1(1)(d) because it does not exceed 20 pages, excluding the parts of the filing exempted under Fed. R. App. P. 32(f).

s/ *Justin D. Heminger*
JUSTIN D. HEMINGER

*Counsel for Federal Respondents*

# Exhibit 1

## Declaration of Neesha Stellrecht, Field Supervisor, U.S. Fish and Wildlife Service

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

| | | |
|---|---|---|
| _____ ) | | |
| CENTER FOR BIOLOGICAL ) | | |
| DIVERSITY, et al., ) | | |
|     *Petitioners*, ) | | |
| ) | | |
|       v. ) | No. 24-3997 | |
| ) | | |
| DEBRA HAALAND, Secretary ) | | |
| of the U.S. Department of the ) | | |
| Interior, et al., ) | | |
|     *Respondents*, ) | | |
| _____ ) | | |

**DECLARATION OF NEESHA STELLRECHT**

I, Neesha Stellrecht, state as follows:

1.      I am the Field Supervisor of the Northern Alaska Field Office of the U.S. Fish and Wildlife Service (Service).

2.      On June 17, 2020, to conclude an Endangered Species Act consultation with the Federal Energy Regulatory Commission (FERC), the Service issued a biological opinion for the Alaska Gasline Development Corporation's Alaska LNG Project.

3.      On October 1, 2024, the Service advised FERC that reinitiation of consultation is warranted in light of developments in Ninth Circuit case law that occurred subsequent to the issuance of the June 17, 2020, biological opinion.

4.      The Service expects FERC to reinitiate consultation within the next few weeks.

5.      The Service expects that the reinitiated consultation will culminate in a new biological opinion for the Project. The Service expects to complete this new consultation by the end of 2025.

6.     The Field Office has limited resources and is experiencing a high workload. Litigating this case while also conducting reinitiated consultation would put additional strain on the Field Office's resources and impede its efforts to comply with other statutory and regulatory obligations.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of October 2024.


NEESHA STELLRECHT
Digitally signed by NEESHA STELLRECHT
Date: 2024.10.01 15:19:20 -08'00'

NEESHA STELLRECHT
FIELD SUPERVISOR
NORTHERN ALASKA FIELD OFFICE
U.S. FISH AND WILDLIFE SERVICE

# Exhibit 2

**Declaration of Anne Marie Eich, Assistant Regional Administrator for Protected Resources in the Alaska Region, National Marine Fisheries Service**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

_____
                                                    )
CENTER FOR BIOLOGICAL          )
DIVERSITY, et al.,                        )
    _Petitioners_,                            )
                                                    )
    v.                                            )    No. 24-3997
                                                    )
DEBRA HAALAND, Secretary      )
of the U.S. Department of the        )
Interior, et al.,                               )
    _Respondents_,                          )
_____)

**DECLARATION OF ANNE MARIE EICH**

I, ANNE MARIE EICH, state as follows:

1.      I am the Assistant Regional Administrator for Protected Resources in the Alaska Region of the National Marine Fisheries Service ("NMFS"), National Oceanic and Atmospheric Administration, within the United States Department of Commerce.

2.      As part of my official duties, I assist the Secretary of Commerce, Gina Raimondo, in carrying out her responsibilities for complying with the Endangered Species Act ("ESA") as that statute applies to consultations on the effects of federal actions on listed species and designated critical habitat under NMFS's jurisdiction in Alaska and the exclusive economic zone off Alaska. I am responsible for overseeing development of biological opinions on consultations under Section 7 of the ESA. As a result, I am familiar with the biological opinion for the Alaska LNG Project.

3.      On June 3, 2020, NMFS issued a biological opinion for the Alaska Gasline Development Corporation's Alaska LNG Project. The biological opinion concluded consultation under the ESA on an order by the Federal Energy Regulatory Commission to authorize the Alaska Gasline Development Corporation ("Alaska Gasline") to build and operate the pipeline and appurtenant facilities, and two authorizations issued by NMFS under the Marine Mammal Protection Act

("MMPA") for the incidental harassment of marine mammals: (1) a five-year Letter of Authorization for Cook Inlet ("Cook Inlet Authorization Letter") and (2) a one-year Incidental Harassment Authorization for Prudhoe Bay ("Prudhoe Bay Harassment Authorization"). This biological opinion determined that these actions were not likely to jeopardize the continued existence of any endangered or threatened species or result in the destruction or adverse modification of critical habitat.

4.      NMFS issued the Prudhoe Bay Harassment Authorization in 2021 and it was valid from July 1, 2023 to June 30, 2024. Alaska Gasline submitted an application for a new Prudhoe Bay harassment authorization to the Permits Division dated June 20, 2024. The Cook Inlet Authorization Letter is valid for five years and will expire on December 31, 2025. Alaska Gasline has informed NMFS that it plans to submit an application for a new Cook Inlet Authorization Letter in October of 2024. NMFS must consult on these authorizations under the ESA to ensure that the actions are not likely to jeopardize the continued existence of any endangered or threatened species or result in the destruction or adverse modification of critical habitat. NMFS plans to meet its consultation obligation for these authorizations by reinitiating consultation on the Alaska LNG biological opinion to incorporate new information and account for the new actions authorizing harassment of marine mammals under the MMPA for the Alaska LNG Project's activities in Prudhoe Bay and Cook Inlet. Alaska Gasline has informed NMFS that on-the-ground work on the Alaska LNG Project has not yet begun.

5.      If Alaska Gasline submits an application for a new Cook Inlet Letter of Authorization in October of 2024, as expected, NMFS expects to complete this new consultation by the end of 2025.

6.      NMFS has limited resources to accomplish its required duties under the ESA to protect and conserve endangered and threatened species. The Protected Resources Division of the Alaska Region of NMFS is already strained by competing demands and a very substantial workload. This strain on resources would be exacerbated by litigating the validity of the current Alaska LNG biological opinion while also working on a new biological opinion that will be replacing the current one.

7.      Once the reinitiated consultation is completed, the Service expects to issue a new biological opinion for the Alaska LNG Project.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that

the foregoing is true and correct.

Executed this 27th day of September 2024.

ANNE MARIE EICH

ASSISTANT REGIONAL
ADMINISTRATOR FOR
PROTECTED RESOURCES

ALASKA REGION

NATIONAL MARINE FISHERIES
SERVICE, NATIONAL OCEANIC
AND ATMOSPHERIC
ADMINISTRATION